Samuel J. Ford, Esq. (SBN 36081)
ford@vhclaw.com
**Varadi, Hair & Checki, LLC**
650 Poydras St., Suite 1550
New Orleans, Louisiana 70130
Telephone: (504) 684-5200, Ext. 5
Facsimile: (504) 613-6351

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Lola Rene Williams,** | Case No.: 5:16-cv-697 |
| | Division: |
| Plaintiff, | Section: |
| v. | Judge: |
| **Equifax Information Services, LLC; Credit Acceptance Corporation; and First Interstate Bank,** | Magistrate Judge |
| | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| Defendants. | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit

Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. LOLA RENE WILLIAMS ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), CREDIT ACCEPTANCE CORPORATION ("CAC"), and FIRST INTERSTATE BANK ("FIB") (or jointly as "Defendants") with regard to erroneous reports of derogatory and negative credit information made by Defendants to national reporting agencies, and for failure of Defendants to properly investigate, and this conduct caused Plaintiff damages.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants took place in Louisiana

6. Any violations by Defendants were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; Jurisdiction arises for Plaintiff's supplemental state claims under 28 U.S.C. § 1367.

9. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

10. Venue is proper in the United States District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of

Bossier Parish, the State of Louisiana and Defendants are subject to personal jurisdiction in the Parish of Bossier, State of Louisiana as they conduct business there, and the conduct giving rise to this action occurred in Louisiana. 28 U.S.C. § 1391(b)(2).

## PARTIES

11. Plaintiff is a natural person residing in the Parish of Bossier, State of Louisiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

12. Defendant Equifax is a foreign limited liability company doing business in the State of Louisiana.

13. Defendant CAC is a debt collection company doing business in the State of Louisiana.

14. Defendant FIB is a bank doing business in the State of Louisiana.

15. Defendants CAC and FIB are furnishers of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

16. Defendant Equifax is a national credit reporting agency, doing business in Louisiana, with a principal place of business in Georgia.

///

## GENERAL ALLEGATIONS

17. At all times relevant, Plaintiff was an individual residing within the State of Louisiana.

18. At all times relevant, Defendants conducted business in the State of Louisiana.

19. On or about June 10, 2014, Plaintiff filed for a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Arizona in order to obtain a fresh start and rebuild her credit. Plaintiff's case was assigned Case Number 2:14-bk-8953 (the "Bankruptcy").

20. The obligations ("Debt") to each defendant were scheduled in the Bankruptcy and Defendants, the Creditors, received notice of the Bankruptcy.

21. On or about September 9, 2014, Plaintiff received a Bankruptcy discharge.

22. None of the Defendants filed any proceedings to declare their Debt "non dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

23. Defendants also did not request relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any *personal* liability for any of the underlying Debts.

24. Accordingly, the Debt to each defendant was discharged through the Bankruptcy.

25. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal for any of the Defendants to report any post-Bankruptcy derogatory collection information.

26. Defendants' attempt to collect upon their respective Debt by reporting post-Bankruptcy derogatory information was therefore false or inaccurate and prohibited by the automatic stay or Discharge.

27. Plaintiff subsequently learned that each of the named Defendants reported post-Bankruptcy derogatory credit information regarding the obligations on Plaintiff's credit reports, thereby causing erroneous, inaccurate, and negative credit information in Plaintiff's credit files.

28. The Consumer Data Industry Association ("CDIA") is an international trade association of corporate members involved in credit reporting and other consumer-related services.

29. To help furnishers comply with their requirements under the FCRA, the CDIA publishes standard guidelines for reporting data called the Metro 2 Format.

30. The Metro 2 Format guidelines for credit reporting are nearly identical for reports made during the "Months Between Petition Filed and BK Resolution" and after "Plan Completed." *See* CDIA Credit Reporting Resource Guide, page 6-17, 18.

31. Notably, the payment history and account status guidelines are the same, meaning that the payment history and account status should be reported the same way **both during and after** bankruptcy proceedings. (emphasis added) *Id.*

32. The continued reporting of erroneous, inaccurate, and derogatory information negatively impacted Plaintiff's credit and her "fresh start".

## CAC Misreported Credit Information

33. In an Equifax credit report dated June 29, 2015, CAC reported the following inaccurate, derogatory information:

- Account No. 3095****: Post-bankruptcy information for the following dates: October 2014 (Date Major Delinquency First Reported).

34. CAC should not have reported derogatory information on Plaintiff's account after June 10, 2014, because Plaintiff filed for Bankruptcy on June 10, 2014.

35. On or about December 5, 2015, Plaintiff disputed CAC's reported information regarding the Debt pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by CAC.

36. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed as follows:

- Account #3095****: This account was discharged in my Bankruptcy which was filed on 06/10/2014 and discharged 09/19/2014, bearing Case No. 2:14-bk-8953 in the District for Arizona. There should be no derogatory reporting after the filing date. Specifically, please remove the inaccurate, derogatory information for the following post-bankruptcy dates: August 2014 (Date Major Delinquency First Reported).

37. The Equifax Dispute Letter further requested that Equifax:

- Immediately delete this account and the disputed derogatory information from my credit report. The discharged debt should be reported with an account balance of $0 with a status of "current".

- Further, there should be no post-bankruptcy activity reported on this account. The date of last activity on this account should pre-date my bankruptcy filing date, 06/10/2014, since a default on this account occurred no later than the Bankruptcy filing date.

- Any post-bankruptcy derogatory information should be immediately deleted from [Plaintiff's] report.

- If [Equifax] do[es] not immediately delete this from [Plaintiff's] credit report, please include a 100-word statement in my credit

report of all of the disputed information contained in this letter regarding this account.

38. Upon information and belief, Equifax timely notified CAC of Plaintiff's dispute, but CAC continued reporting derogatory information.

39. CAC and Equifax were required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

40. On or about January 19, 2016, Plaintiff received notification from Equifax that CAC and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and Defendants verified some of the disputed account information and/or failed to address all of the inaccurate information disputed by Plaintiff.

41. Surprisingly, rather than remove all the derogatory information from Plaintiff's report, CAC and Equifax simply left derogatory information on Plaintiff's report. Specifically, CAC and Equifax reported the following inaccurate, derogatory information:

- Account #3095****: Post-bankruptcy information for the following dates: October 2014 (Date Major Delinquency First Reported).

42. This reporting of a "Date Major Delinquency First Reported" is after Plaintiff's bankruptcy was discharged on September 19, 2014.

43. Plaintiff's personal liability on this account was discharged on September 19, 2014, which means the reporting of a delinquency after discharge is illegal and inaccurate.

44. CAC and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

45. CAC and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

46. Due to CAC and Equifax's failure to investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

47. Plaintiff's continued efforts to correct CAC and Equifax's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with CAC and Equifax were fruitless.

48. CAC and Equifax's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

49. CAC and Equifax's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

50. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, CAC and Equifax failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

### First Interstate Bank Misreported Credit Information

51. In an Equifax credit report dated June 29, 2015, FIB reported the following inaccurate, derogatory information:

- Account #40616485****: Post-bankruptcy information for the following dates: August 2014 (Date Major Delinquency First Reported).

52. FIB should not have reported derogatory information on Plaintiff's account after June 10, 2014, because Plaintiff filed for Bankruptcy on June 10, 2014.

53. On or about October 22, 2014, Plaintiff disputed FIB's reported information regarding the Debt pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by FIB.

54. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed as follows:

- This account was discharged in my Bankruptcy which was filed on 06/10/2014 and discharged 09/19/2014, bearing Case No. 2:14-bk-8953 in the District for Arizona. There should be no derogatory reporting after the filing date. Specifically, please remove the inaccurate, derogatory information for the following post-bankruptcy dates: August 2014 (Date Major Delinquency First Reported).

55. The Equifax Dispute Letter further requested that Equifax:

- Immediately delete this account and the disputed derogatory information from [Plaintiff's] credit report.
- The discharged debt should be reported with an account balance of $0 with a status of "current".
- Further, there should be no post-bankruptcy activity reported on this account. The date of last activity on this account should pre-date my bankruptcy filing date, 06/10/2014, since a default on this account occurred no later than the Bankruptcy filing date.
- Any post-bankruptcy derogatory information should be immediately deleted from [Plaintiff's] report.

**COMPLAINT** 12

- If [Equifax] do[es] not immediately delete this from [Plaintiff's] credit report, please include a 100-word statement in my credit report of all of the disputed information contained in this letter regarding this account.

56. Upon information and belief, Equifax timely notified FIB of Plaintiff's dispute, but FIB continued reporting derogatory information.

57. FIB and Equifax were required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

58. On or about January 19, 2016, Plaintiff received notification from Equifax that FIB and Equifax received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and verified some of the disputed account information and/or failed to address all of the inaccurate information disputed by Plaintiff.

59. Surprisingly, rather than remove all the derogatory information from Plaintiff's report, FIB and Equifax simply left derogatory information on Plaintiff's report. Specifically, FIB and Equifax reported the following inaccurate, derogatory information:

- Post-bankruptcy information for the following dates: August 2014 (Date Major Delinquency First Reported).

60. The reporting of the "Date Major Delinquency First Reported" was two months after the filing of bankruptcy.

61. Therefore, the "Date Major Delinquency First Reported" is not referring to the filing of Plaintiff's bankruptcy.

62. Furthermore, this FIB account was included in Plaintiff's bankruptcy, and Plaintiff was no longer obligated to make payments on the account.

63. Thus, FIB and Equifax's reporting of a "Date Major Delinquency First Reported" two months after Plaintiff filing for bankruptcy is blatantly inaccurate.

64. FIB and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

65. FIB and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

66. Due to FIB and Equifax's failure to investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

67. Plaintiff's continued efforts to correct FIB and Equifax's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with FIB and Equifax were fruitless.

68. FIB and Equifax's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

69. FIB and Equifax's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

70. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, FIB and Equifax failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

///

///

///

### FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

73. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

74. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

### FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA; and
- any other relief the Court may deem just and proper.

### TRIAL BY JURY

75. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: May 18, 2016                             Respectfully submitted,

                                                BY: /s/ SAMUEL J. FORD_____
                                                    SAMUEL J. FORD, ESQ.
                                                    ATTORNEY FOR PLAINTIFF